**THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MONIQUE PARKER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**GATE 1, LTD.**, and **GATE 1 TRAVEL, LTD.**,<br><br>Defendants. | Case No.: 2:25-cv-7011<br><br>Hon.: |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Monique Parker, by and through her undersigned counsel, who hereby brings this Collective and Class Action Complaint against Defendants, Gate 1 LTD and Gate 1 Travel, and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq*, and common law.

2. Defendants "offer[] escorted tours, European river cruises, independent vacations and customized international vacation packages for less"[1] and, according to their website, "have

[1] https://www.linkedin.com/company/gate-1-travel/ (last visited Nov. 23, 2025).

grown to over 600 employees worldwide with international service offices and round the clock support for [their] travelers."[2]

3. In providing the aforementioned service, Defendants employed hourly call center employees with job titles that include, but are not limited to, Service Agent, Reservation Agent, and Call Center Representative (collectively referred to as "CSRs"), in remote call center settings across the United States.

4. Defendants classified their CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5. Regardless of the specific job title, all CSRs: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing call center based assistance to Defendants' customers.

6. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Plaintiff and Defendants' CSRs, are homogenous, and it issued guidance to alert and condemn an employer's non-payment of an employee's necessary boot-up and call-ready activities. [3] ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

7. Defendants violated the FLSA and common law by systematically failing to

[2] https://www.gate1travel.com/about.aspx (last visited Nov. 23, 2025)
[3] https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Nov. 23, 2025).

compensate their CSRs for work tasks completed before and during their scheduled shifts, when they were not logged into Defendants' timekeeping system. This timekeeping procedure resulted in CSRs not being paid for all overtime hours worked and in workweeks in which CSRs worked overtime, for straight time.

8. More specifically, Defendants failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendants' timekeeping system before the start of their scheduled shifts and when returning from their meal periods.

9. Plaintiff seeks a declaration that her rights and the rights of the putative FLSA Collective and Class members were violated, and a judgment awarding unpaid wages, liquidated damages, attorneys' fees, and costs, along with all other relief to which they are entitled. Plaintiff further seeks such remedies to make the workers whole for the harm they suffered and to ensure that Defendants do not subject future employees to the same unlawful practices.

10. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under the FLSA, 29 U.S.C. §§ 201, *et seq.*

12. Additionally, this Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13. Upon information and belief, Defendants' annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

14. Defendants' employees, including Plaintiff, engage in interstate commerce – including, but not limited to utilizing telephone lines and internet – and therefore, they are also covered by the FLSA on an individual basis.

15. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

16. This Court has personal jurisdiction over Defendants because Defendants conduct business within the State of Pennsylvania, employs individuals within the State of Pennsylvania, and is registered with the Pennsylvania Department of State.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants conduct business within this District, employ CSRs in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

18. Plaintiff is an individual who resides in Fort Washington, Pennsylvania. Plaintiff worked for Defendants as a non-exempt Service Agent from approximately March 6, 2023 to July 28, 2023. Plaintiff executed her Consent to Join form, attached hereto as **Exhibit A**.

19. Defendant GATE 1, LTD. is an actively registered domestic business corporation in Pennsylvania and has a principal place of business located at 455 Maryland Drive Fort Washington, PA 19034. Defendant GATE 1, LTD. maintains a registered agent for service of process listed as Peter Spirgel, 1845 Walnut Street, Suite 2250, Philadelphia, PA, 19103-4702.

20. Defendant GATE 1 TRAVEL is a foreign (Delaware) corporation registered to do business in Pennsylvania and has a principal place of business located at 455 Maryland Drive Fort Washington, PA 19034. Defendant GATE 1 TRAVEL maintains a registered agent for service of process listed as The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

21. At all relevant times, Defendants were a common enterprise and "joint "employers" of Plaintiff and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d) and 29 C.F.R. 791.2(a).

## GENERAL ALLEGATIONS

22. Prior to hiring prospective CSRs, Defendants provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

23. Defendants maintain documents demonstrating the promised hourly wage for each CSR, including, but not limited to: offer letters, paystubs, and/or payroll records.

24. Plaintiff received an offer from Defendants to work as a CSR, and she accepted Defendants' offer with the understanding that her base hourly rate would be paid for all hours worked.

25. Plaintiff performed under her agreement with Defendants by carrying out her job duties and responsibilities. More specifically, Plaintiff handled prospective and/or current customer inquiries; booked and modified travel arrangements such as flights, tours, and hotels; and collected customer payments and updated client information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26. Defendants paid their CSRs at varying hourly rates.

27. Defendants' CSRs typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

28. There were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

29. Defendants provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the day and when returning from their meal breaks; the importance of attendance and schedule expectations; and Defendants' policies.

30. The training that all of Defendants' CSRs received was substantially, if not entirely, the same and Defendants' CSRs, including Plaintiff, were subject to the same relevant policies and procedures.

31. At all relevant times, Defendants controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

32. To the extent that Defendants may have had written policies that required their employees to be paid for all hours worked, including overtime, the reality is that Defendants did not follow these policies, which resulted in CSRs, like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

33. Defendants required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs and applications in order to perform their job duties.

34. Defendants issued work schedules to Plaintiff and other similarly situated CSRs that strictly dictated Defendants' work expectations, specifically "on schedule" requirements.

35. More specifically, Defendants instructed Plaintiff and other similarly situated CSRs to be "on schedule" (meaning logged into and have ready all computer programs and applications they utilized as part of their job duties) the moment their scheduled shifts started. This required

Defendants' CSRs to load and log into their essential work-related computer programs and applications ***before*** the start of their shifts and ***before*** they were allowed to clock in so they could be prepared to field Defendants' customers' inquiries the moment their shifts began.

36. During the boot-up and login process, Defendants' CSRs experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

37. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and their CSRs in order to pressure them into performing pre- and mid-shift work off-the-clock.

38. These policies and procedures, which were utilized for purposes of evaluating CSR job performance, effectively enforced the "on schedule" policy and required CSRs to perform off-the-clock work.

39. Pursuant to these policies and procedures, Defendants' CSRs, including Plaintiff, faced poor performance evaluations, warnings, discipline, and termination for failing to be "on schedule."

40. All of Defendants' CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the CSRs' work and they could not perform their jobs without them.

41. Defendants' CSRs also performed off-the-clock work when they returned from their 30-minute lunch periods and prepared themselves to be "on schedule" the moment their meal periods concluded. Specifically, CSRs performed some or all of the computer boot-up process mentioned above,

42. 29 C.F.R. § 553.221 provides:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

43. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

44. The pre- and mid-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into their computers and applications and programs directly benefited Defendant and was integral and indispensable to the CSRs' job responsibilities.

45. As a result of the off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately eight (8) to thirteen (13) minutes of compensation every day.

46. At all relevant times, Defendants were able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and mid-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching their contracts with their CSRs.

47. Further, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

48. Defendants knew or should have known that the FLSA and applicable state law require employers to compensate employees for all hours worked during the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a); *see also* 43 P.S. § 333.104.

49. Defendants also knew or should have known that 29 U.S.C. § 207 requires non-exempt employees who work more than 40 hours in a workweek to be paid overtime at one and

one-half times their regular rate of pay, which includes compensable boot-up and call-ready work.

50. Nevertheless, Defendants failed to pay Plaintiff and all other current and former CSRs overtime compensation at one and one-half times their regular rates of pay for the off-the-clock work described herein.

51. Despite knowing Plaintiff and all other CSRs performed this pre- and mid-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

52. Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

53. Defendants were aware that Plaintiff and the CSRs worked more than 40 hours in multiple workweeks because Defendants' own payroll and scheduling records documented the hours they were scheduled to work and the hours for which Defendants issued payment.

54. Upon information and belief, Defendants also possess, control, and/or have access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

55. Because Defendants required their CSRs, including Plaintiff, to perform pre- and mid-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendants. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

**A. <u>Unpaid Pre-Shift Boot-Up and Call Ready Work</u>**

56. Defendants' CSRs were trained and required to start up and log into Defendants' computer network and software programs in order to access the information necessary to perform

their job duties and be considered “on schedule” *before* “punching into” Defendants’ timekeeping system.

57. The pre-shift boot-up and login process generally consisted of the following steps:

a. Turning on or waking up the computer (Windows);

b. Logging in to Defendants’ network via VPN with two-factor authentication;

c. Logging in to Defendants’ email program;

d. Logging in to WorkDay;

e. Logging in to SoftTrip; and

f. Logging in to Microsoft Teams.

58. The boot-up and login process described above took approximately five (5) to ten (10) minutes per shift.

59. If CSRs arrived immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be “on schedule” when their scheduled shifts began, and Defendants’ software would automatically mark them tardy.

60. Defendants expected Plaintiff and all other CSRs to respond to customer inquiries and handle outbound calls for the entirety of their scheduled. This expectation, coupled with Defendants’ attendance and adherence policies, necessarily required CSRs to perform work off-the-clock in order to be fully prepared and “on schedule” at the start of their shifts.

61. The pre-shift off-the-clock time Plaintiff and all other CSRs spent booting up and logging in directly benefited Defendants and was integral and indispensable to the CSRs’ job responsibilities.

62. Despite knowing Plaintiff and all other CSRs perform this pre-shift work,

Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

**B. Unpaid Mid-Shift Off-The-Clock Work**

63. Defendants promised their CSRs one unpaid 30-minute meal period each eight (8) hour shift.

64. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

65. Instead of complying with the law, Defendants did not provide CSRs with legitimate bona fide meal periods because they required their CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back in and place themselves in a "ready" state so they could resume taking live calls the moment their meal periods concluded.

66. CSRs spent approximately three (3) minutes per shift performing this work during their unpaid meal periods. Thus, Defendants maintained a common plan and policy pursuant to which they failed to pay CSRs approximately three (3) minutes per day of work performed during their meal period.

67. The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefited Defendants and the tasks undertaken in connection

with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

68. Defendants' management was aware that Plaintiff and other CSRs performed this off-the-clock work but permitted and even rewarded it through Defendants' schedule adherence metrics.

## C. Defendants' Recordkeeping Violations

69. The Pennsylvania wage and hour laws state that every employer "shall keep a true and accurate record of the hours worked by each employe and the wages paid to each." *See* 43 P.S. § 333.108.

70. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records. 29 U.S.C. § 211(c).

71. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

72. Upon information and belief, Defendants failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA and Pennsylvania wage and hour laws because they failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CCRs' payroll records.

73. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which

> he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

74. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## JOINT EMPLOYMENT ALLEGATIONS

75. At all relevant times, Defendants were, at minimum, joint employers of Plaintiff and other CSRs.

76. At all relevant times, Defendants managed the day-to-day supervision and direction of the CSRs.

77. At all relevant times, Defendants' corporate policies and procedures guided and mandated Plaintiff and the CSRs' jobs.

78. At all relevant times, Defendants maintained the Plaintiff and other CSRs' employment records.

79. Joint employer status is further reflected by the fact that Plaintiff's 2023 IRS Form W2 identifies both Defendants as her employers and a single employer identification number associated with them, demonstrating that they operated as a united employment entity for purposes of wage reporting.

80. The unlawful conduct at issue in this case arises from Defendants' corporate policies for CSRs.

**COMMON ENTERPRISE ALLEGATIONS**

81. Two or more businesses or companies are considered a single enterprise if they (1) perform related activities; (2) under unified operations or common control; and (3) for a common business purpose. *See Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 518 (1973); Brock v. Best Western Sundown Motel, Inc., 883 F.2d 51, 52 (8th Cir. 8th Cir.1989); Donovan v. Weber, 723 F.2d 1388, 1391 (8th Cir.1984).

82. As discussed herein, Defendants were engaged in a common enterprise relative to the operations and employment of Plaintiff and CSRs.

83. Defendants were engaged in the aforementioned business for the joint purpose of offering tours across seven (7) continents to travelers nationwide.

84. As discussed herein, Defendants loosely operated in the same or similar manner, under a common name, and through unified or common control. They also advertised collectively as Gate 1.[4]

**FLSA COLLECTIVE ACTION ALLEGATIONS**

85. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of herself and on behalf of:

> *All current and former hourly CSRs who work or have worked for Defendants at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

[4] *See* https://www.gate1travel.com/about.aspx (last visited Nov. 23, 2025).

86. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

87. Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

88. Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

89. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

90. Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

91. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, worked for Defendants' benefit.

92. Defendants' unlawful conduct was (and is) widespread, repeated, and consistent.

93. With respect to the claims set forth in this action, a collective action under the

FLSA is appropriate because, under 29 U.S.C. § 216(b), the CSRs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendants' practices, policies, or plan of not paying their CSRs for all straight-time and overtime wages in violation of the FLSA); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

94. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of members of the FLSA Collective should be readily available from a review of Defendants' personnel, scheduling, time, and payroll records.

95. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## RULE 23 PENNSYLVANIA STATE LAW CLASS ACTION ALLEGATIONS

96. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former CSRs who work or have worked for Defendants in Pennsylvania at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff reserves the right to amend this definition if necessary.

97. *Numerosity:* The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Pennsylvania Class members, each of whom should be easy to identify from Defendants' computer systems and personnel and payroll records.

98. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Pennsylvania Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants maintained a common policy or practice requiring CSRs to perform off-the-clock work before and/or during their scheduled shifts;

b. Whether Defendants violated Pennsylvania state law by failing to pay CSRs for all hours worked;

c. Whether Defendants violated Pennsylvania state law by failing to make, keep, and preserve true and accurate payroll records; and

d. The proper measure of damages sustained by the Rule 23 Pennsylvania Class.

99. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Pennsylvania Class members in that Plaintiff and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

100. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

101. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Pennsylvania Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Rule 23 Pennsylvania Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

102. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants maintain a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

103. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)

("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

104. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

105. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and on behalf of:

> *All current and former CSRs who work or have worked for Defendants anywhere in the United States during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

106. *Numerosity:* The members of the Rule 23 Nationwide Class are so numerous that joinder of all members would be impracticable, and the disposition of their claims as a class action will benefit the parties and the Court. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members, each of whom should be easy to identify from Defendants' computer systems and personnel and payroll records.

107. *Commonality/Predominance:* There is a well-defined community of interest among the Rule 23 Nationwide Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

e. Whether the pre- and mid-shift time the All Agent Class members spent on startup and login activities each shift is compensable;

f. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract and/or resulted in Defendants being unjustly enrichment; and

g. The proper measure of damages sustained by the Rule 23 Nationwide Class.

108. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Nationwide Class members in that Plaintiff and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

109. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

110. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia,* it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the claims of the Rule 23 Nationwide Class members, even if each class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds, or thousands, of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively,

proceeding by way of a class action would permit the efficient supervision of the Rule 23 Nationwide Class members' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

111. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants maintain a payroll system that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

112. Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

113. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES**
**(FLSA Collective)**

114. Plaintiff re-alleges and incorporates all previous paragraphs herein.

115. At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

116. Defendants were engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

117. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

118. At all relevant times, Defendants jointly employed Plaintiff and all other members of the FLSA Collective within the meaning of the FLSA.

119. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

120. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

121. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

122. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

123. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

124. At all times relevant to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over 40 hours per week.

125. The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

126. As a result of Defendants' unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

127. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

128. Defendants' violations of the FLSA were knowing and willful.

129. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

130. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II
## RULE 23 PENNSYLVANIA CLASS ACTION
## VIOLATIONS OF THE PENNSLYVANIA MINIMUM WAGE ACT, 43 P.S. §§ 333.101, *et seq.*, AND PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. §§ 333.101, *et seq.* ("PENNSYLVANIA WAGE ACTS")

131. Plaintiff re-alleges and incorporates all previous paragraphs herein.

132. At all times relevant to the action, Defendants were an employer covered by the overtime and wage mandates of the Pennsylvania Wage Acts, and Plaintiff and the Rule 23 Pennsylvania Class were employees entitled to the Pennsylvania Wage Acts' protections. *See* 43 P.S. § 333.103(f)-(g); 43 P.S. § 260.2a.

133. The Pennsylvania Wage Act entitles employees to compensation for every hour worked in a workweek. *See* 43 P.S. § 333.103.

134. The PMWA, 43 P.S. §§ 333.101, *et seq.* requires employers to pay their employees minimum wages, *see* 43 P.S. § 333.104(a)-(a.1), and time-and-a-half their regular rate of pay of

hours worked in excess of 40 per week, *see* 43 P.S. § 333.104(c).

135. The PMWA defines wages as "compensation due to any employe by reason of his or her employment." *See* 43 P.S. § 333.103(d).

136. The Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. §§ 260.1, *et seq.* requires that "[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer." 43 P.S. § 260.3(a).

137. As discussed herein, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Pennsylvania Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff and the Rule 23 Pennsylvania Class members performed on Defendants' behalf.

138. For example, Defendant offered to compensate Plaintiff at a minimum of $20.00, plus any overtime pay required by applicable law, if she agreed to perform services for Defendants as a CSR. Plaintiff accepted Defendants' offer and performed under her contract by fulfilling her duties as a CSR, which included, but was not limited to, the pre-shift and meal-period work activities required of her, in reliance on the offer.

139. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, including the unpaid pre-shift and meal-period work activities described herein, but Defendants failed to perform by paying Plaintiff and the Rule 23 Pennsylvania Class the promised wages for all work.

140. Upon information and belief, each Rule 23 Pennsylvania Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period, in addition to applicable overtime premiums.

141. Plaintiff and every other Rule 23 Pennsylvania Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift and meal-period work described herein.

142. Defendants breached their contractual promises by failing to pay Plaintiff and the Rule 23 Pennsylvania Class for all wages (regular and overtime) owed.

143. 43 P.S. § 333.113 provides that an employee who is not paid in accordance with the PMWA may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees. *See* 43 P.S. § 333.113.

144. Under 43 P.S. § 260.9a, an employee aggrieved by an employer's violation of the PWPCL may bring a civil action to recover all unpaid amounts, plus liquidated damages equal to twenty-five (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater, costs and reasonable attorneys' fees. *See* 43 P.S. § 260.9a(b), (f); *see also* 43 P.S. § 260.10.

145. Defendants violated the Pennsylvania Wage Acts by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the work activities described in this Complaint.

146. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

147. As a result, Plaintiff and the Rule 23 Pennsylvania Class have and will continue to

suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Pennsylvania Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Pennsylvania Wage Acts at an amount to be proven at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

148. Plaintiff re-alleges and incorporates all previous paragraphs herein.

149. At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

150. Evidence of these contracts include Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

151. For example, Defendant offered to compensate Plaintiff at a minimum of $20.00 per hour if she agreed to perform services for Defendants as a CSR. Plaintiff accepted Defendants' offer and performed her duties as a CSR in reliance on the offer.

152. Defendants breached their contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for all of the hours worked.

153. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to varying minimum hourly rates within the applicable period.

154. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of

Defendants' contractual promises contained in Defendants' offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and mid-shift work described herein.

155. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

156. Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

157. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

158. Defendants also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

159. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

160. Plaintiff re-alleges and incorporates all previous paragraphs herein.

161. This Count is pled in the alternative to Count III *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

162. At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendants' benefit.

163. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

164. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

165. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

166. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

167. Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

168. Upon information and belief, Defendants used the monies owed to Plaintiff and

every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

169. Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

170. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

171. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying this action as a class action (for the Rule 23 Pennsylvania Class) pursuant to Fed. R. Civ. P. 23(b)(3) with respect to Plaintiff's state law claims (Count II);

d. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

e. An Order designating Plaintiff to act as the representative of the FLSA Collective, the Rule Pennsylvania Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f. An Order declaring that Defendants violated the FLSA and its attendant regulations as set forth above;

g. An Order declaring that Defendants' violations of the FLSA were willful;

h. An Order declaring that Defendants violated Pennsylvania state law and its attendant regulations as set forth above;

i. An Order declaring that Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at the pre-established (contractual) rate for each hour they worked; OR in the alternative, an Order declaring Defendants were unjustly enriched by the off-the-clock work they required Plaintiff and the Rule 23 Nationwide Class to perform;

j. An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective, the Rule 23 Pennsylvania Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such further relief as this Court deems appropriate.

**<u>JURY DEMAND</u>**

Plaintiff, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: December 12, 2025

Respectfully Submitted,

*_/s/ Gary F. Lynch_*
Gary F. Lynch (PA 56887)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
(412) 322-9243
gary@lcllp.com

Kevin J. Stoops (P64371)**
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
***Pro Hac Vice forthcoming*

*Attorneys for Plaintiff and the Putative Collective/Class Members*